**SIGNED.**

Dated: September 22, 2010



_____
**JAMES M. MARLAR
Chief Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>FIRST MAGNUS FINANCIAL CORPORATION,<br><br>　　　　　　　　　　　　Debtor.<br><br>LARRY LATTIG, LITIGATION TRUSTEE FOR THE FIRST MAGNUS LITIGATION TRUST,<br><br>　　　　　　　　　　　　Plaintiffs,<br>vs.<br><br>STONEWATER MORTGAGE CORPORATION; et al.<br><br>　　　　　　　　　　　　Defendants. | Chapter 11<br><br>No. 4:07-bk-01578-JMM<br><br>Adversary No. 4:09-ap-00211-JMM<br><br>**MEMORANDUM DECISION**<br><br>**(James Warner Summary Judgment on**<br><br>**Claims Related to Post-petition**<br><br>**Transfers of Abandoned Equipment;**<br><br>**Counts 41-43 and 45-48)** |

Before the court is the motion for summary judgment filed by Defendant James Warner (ECF No. 161). The matter was briefed, and then argued on July 15, 2010. Thereafter, supplemental papers were filed. The court has reviewed all of the relevant filings, and now rules.

## ISSUE

Are there genuine and material issues of fact which would require certain counts to proceed to a trial on the merits?

# CONCLUSION

Summary judgment will be GRANTED.

# DISCUSSION

## A. The Summary Judgment Motion

Mr. Warner seeks summary judgment on Counts 41-43 and 45-48 of Plaintiff's Second Amended Complaint. The counts, as they relate to post-petition actions of Mr. Warner, allege:

| | |
|---|---|
| Count 41 | That Mr. Warner improperly came into possession of confidential and proprietary information belonging to First Magnus Financial Corporation ("Debtor" or "FMFC"). That Mr. Warner's actions unlawfully misappropriated Debtor's property. |
| Count 42 | That Mr. Warner converted property belonging to the Debtor. |
| Count 43 | That Mr. Warner violated fiduciary duties to FMFC by a scheme designed to deprive FMFC of its valuable property interests. |
| Count 45 | That Mr. Warner unjustly enriched himself by acquiring property of FMFC which contained "confidential information." |
| Count 46 | That the remedy of constructive trust should be imposed on former FMFC property which had been transferred to Mr. Warner. |
| Count 47 | That Mr. Warner conspired with others to wrongfully convey FMFC's property to others. |
| Count 48 | That Mr. Warner aided and abetted other defendants in transferring valuable Debtor assets to others. |

## B. Bankruptcy Filing

The Debtor filed a Chapter 11 case on August 21, 2007. At that time, unable to continue to operate, it began the process of winding up its affairs. Eventually, it proposed a second amended liquidating plan on January 4, 2008 (Administrative ECF No. 1065), which was confirmed by the court on February 28, 2008 (Administrative ECF No. 1589).

During the course of the Chapter 11 case, the Debtor functioned as a debtor-in-possession ("DIP"). 11 U.S.C. § 1107. No trustee was appointed, and the DIP functioned as a fiduciary for the estate and its creditors. As a DIP, the Debtor entity enjoyed, among other things, many of the powers available to an independent trustee. 11 U.S.C. §§ 1106; 1107.

Shortly after the bankruptcy filing, the court appointed counsel for the DIP (Administrative ECF No. 133), and, in addition, after the U.S. Trustee formed an unsecured creditors' committee, appointed counsel to act on behalf of that constituent group (Administrative ECF No. 143).

During the course of the Chapter 11 case, the DIP, with the collaboration and consent of the unsecured creditors' committee, began the arduous process of evaluating what assets the Debtor had, deciding which of those assets had realizable value to the estate, and making decisions to slough off assets which did not appear to have value. In the latter instances, the DIP sought court approval whenever it felt that particular assets should leave the estate. These decisions came in many forms. Sometimes, the DIP affirmatively petitions the court for abandonment under § 554; sometimes the DIP does not contest motions for stay relief so that secured creditors can enforce their rights (§ 362); sometimes the DIP rejects leases outright (§ 365); and occasionally, the DIP sells assets at duly noticed sales (§ 363).

Each time the court enters an order for one of these types of actions, the entry of such an order becomes final if it was not appealed within 10 days. FED. R. BANKR. P. 8002.[1]

---

[1] The time period has been expanded to 14 days.

### C. Mr. Warner's Position

Mr. Warner maintains, and the undisputed facts reveal, that he was never employed by the Debtor. As a financial consultant for Magnus Corporation, his role, relating to the purchase of various pieces of furniture and equipment at Chase Bank's UCC sale, was to act as the agent for FM Realty, the successful purchaser. FM Realty paid $239,903.09 to purchase that property from Chase (Ex. K to Mr. Warner's Statement of Facts, ECF No. 162).

Earlier, that property had been abandoned by the Debtor, and Chase, as the secured creditor, had taken possession of it. Then, Chase exercised its sale remedies under the UCC, and sold the collateral to FM Realty, applying the sales proceeds to the debt of the Debtor.

These facts are not in dispute.

### D. Mr. Lattig's Position

Larry Lattig, the "Litigation Trustee," argues that property which was transferred to Chase, pursuant to the abandonment order or orders, was in excess of the authority granted. Mr. Lattig then maintains that same property was surreptitiously imbedded within the abandoned items, and then bought back by the Debtor's affiliate, FM Realty, with the assistance and knowing participation of Mr. Warner.

### E. The Essence of the Claims Against Mr. Warner

Each of the summary judgment counts against Mr. Warner rely on scienter, state of mind and a knowledge that he and others had to covertly steal, appropriate or purloin confidential information contained on computer hardware which was later sold by Chase at a UCC sale, back to an affiliate of the Debtor.

To this particular conduct, Mr. Warner has provided, *inter alia*, his affidavit which states:

7) To my knowledge, none of the types of "confidential information" identified in the Second Amended Complaint were on any of the equipment I helped FM Realty purchase from Dovebid [Chase's sales agent].

8) To my knowledge there was no agreement among any of the defendants to misappropriate or convert assets of FMFC, and I certainly was not a party to any such agreement.

(Mr. Warner's Affidavit, Ex. A to Statement of Facts, ECF No. 162.)

As Mr. Lattig's causes of action, on the counts at issue, relate to a state of mind, it is Mr. Lattig's burden to present proof that specifically or inferentially creates a factual issue which would cast doubt upon Mr. Warner's statements that he never had a knowing role in such a scheme (if such a scheme ever existed).

### F. <u>Mr. Lattig's Response to Motion for Summary Judgment</u>

In response to Mr. Warner's straightforward affidavit and other undisputed facts, Mr. Lattig has produced:

1. The affidavit (ECF Nos. 193 and 293) of Jamie Welton, Mr. Lattig's litigation attorney, which sets forth a series of facts, but which do not contradict the aforementioned paragraphs 7 and 8 of Mr. Warner's affidavit. Nor does Mr. Welton's assemblage of facts create a reason to infer that Mr. Lattig's legal theories have a factual foundation.

2. Mr. Welton's affidavit certifying certain parts of deposition transcripts regarding the issue of the "wiping" of information (ECF No. 193).

3. Portions of depositions from, among others, Eric Rodziewicz, Karl Young, James Warner and Dominick Marchetti. There may be other persons in the batch of partial transcripts, but only the witnesses named are identified.

## G. **Post-Hearing Supplements**

After the summary judgment arguments on July 15, 2010 (ECF Nos. 207 and 206), the parties submitted additional briefing and evidence concerning whether any Debtor proprietary information was even on the software transferred to Chase's UCC sales agent, Dovebid. Mr. Warner produced several documents, including an affidavit of Eric Rodziewicz (ECF No. 209), which tended to prove that all of the Debtor's proprietary information had been removed ("wiped") from the hardware sent to Dovebid.

In response, Mr. Lattig argues that the computers which (apparently) never left the offices were not "wiped" (ECF Nos. 285-286).

What Mr. Lattig has not produced, however, is some evidence that, in fact, Debtor's confidential and proprietary information had not been "wiped" from the hardware and software transferred to Chase's UCC agent (Dovebid). Or, that such proprietary information is in use today by StoneWater, G-Force 1 or some other affiliated entity. Or, that Mr. Warner had some clearly active and affirmative role in purloining or participating in a surreptitiously and knowing orchestration of events designed to secretly move the Debtor's proprietary software from the Debtor, through Chase and Dovebid, to FM Realty. Or, that there was any monetary damage done to the Debtor.

## **CONCLUSION**

After reviewing all of the evidence submitted, the court must conclude that Mr. Lattig's evidence, or batches of evidence grouped together, does not establish a case on the legal theories set forth in Counts 41-43 and 45-48. And, in the context of Mr. Warner's motion for summary judgment, Mr. Lattig been unable to present a single fact which either directly or inferentially suggests that the legal theories asserted against Mr. Warner necessitate a full trial on the merits. Mr. Lattig is unable to establish an affirmative legal case against Mr. Warner.

Mr. Lattig's body of facts, while apparently intending to "connect the dots" in such as a way as to encircle Mr. Warner, do not end in that result. The dots simply do not connect in any manner to show either a conspiracy, or a conspiracy that Mr. Warner participated in. The theories fail for lack of evidence.

Accordingly, Mr. Warner's motion for summary judgment as to the claims presented against him in Counts 41-43 and 45-48, shall be GRANTED, and those claims shall be dismissed, with prejudice. A judgment, with Rule 54(b) language, will terminate this phase of the litigation.

DATED AND SIGNED ABOVE.

COPIES to be sent by the Bankruptcy Notification Center ("BNC") to all parties to this adversary proceeding and:

Barney M. Holtzman
Fennemore Craig PC
One S. Church, Suite 1000
Tucson, AZ 85701-1627      Email bholtzman@fclaw.com